# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                                   Case No. 14-10150-WRS
                                                                        Chapter 13
ALESHA SCARVER,

      Debtor

## <u>MEMORANDUM OPINION</u>

This Chapter 13 bankruptcy case is before the Court on the "Motion for a Determination of Secured Status" filed by 1st Franklin Financial Corporation ("1st Franklin"). (Doc. 40). The question presented is whether a Chapter 13 debtor acting in good faith may modify her confirmed plan to surrender collateral and reclassify any deficiency balance as an unsecured claim. For the reasons set forth below, the Court holds that a debtor may modify her confirmed plan for that purpose. Therefore, 1st Franklin's motion is DENIED.

## I. FACTS & PROCEDURAL HISTORY

Alesha Scarver ("Scarver") obtained a loan from 1st Franklin on July 31, 2012, in the amount of $6,931.99 that was secured by her 2001 Toyota Corolla. (Claim 7). Scarver filed Chapter 13 bankruptcy on January 28, 2014, and valued the Corolla at $4,125.00. (Doc. 1). 1st Franklin filed a secured proof of claim for $4,867.89, and Scarver proposed to keep the Corolla by paying 1st Franklin $99 per month at 4.25% interest; Scarver's plan classified 1st Franklin's claim as a "910-claim." (Claim 7; Doc. 2). Unsecured creditors would be paid nothing. (Doc. 2). The Court confirmed Scarver's plan on April 11, 2014. (Doc. 19).

Sometime in 2015, Scarver was involved in a traffic accident while driving the Corolla. On September 14, 2015, Scarver objected to 1st Franklin's claim. (Doc. 25). She explained that

her insurer had declared the Corolla to be a total loss and was willing to pay $2,802.45 for it, and Scarver wanted 1st Franklin's claim to be deemed fully satisfied upon payment of the insurance proceeds. (Doc. 25). 1st Franklin did not respond and the Court sustained Scarver's objection by negative notice on October 21, 2015. (Doc. 26); *see* LBR 3007-1. On November 4, 2015, Scarver moved to modify her plan by proposing to surrender the Corolla and the $2,802.45 in insurance proceeds to 1st Franklin. (Doc. 29). Again 1st Franklin did not respond and the Court granted Scarver's motion to modify her plan by negative notice on November 17, 2015. (Doc. 30); *see* LBR 9007-1.

1st Franklin filed the instant motion for determination of secured status on April 12, 2016. (Doc. 40). 1st Franklin argues that, after application of the insurance proceeds, the remaining balance on its claim should still be treated as secured. (Doc. 40). The Court held a hearing on May 17, 2016, and invited Scarver's bankruptcy attorneys to file a response, but they have not done so.[1]

## II. LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). This is a final order.

---

[1] For that reason, the Court declines to apply any sort of estoppel or preclusion on 1st Franklin's motion based on its prior negative notice rulings. It would be inequitable to penalize 1st Franklin for its earlier failures to respond when Scarver is being equally unresponsive now.

-2-

## A.  Bifurcation and "Cramdown" of Secured Claims

Before reaching the specific issue in this case, it is helpful to understand the nature of secured claims and a Chapter 13 debtor's options regarding their treatment prior to plan confirmation.  "The general rule" under 11 U.S.C. § 506(a) "is that 'a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that lien is considered unsecured.'"  In re Moorer, 544 B.R. 702, 704 (Bankr. M.D. Ala. 2016) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989)).  "Chapter 13 debtors enjoy broad power to modify the rights of the holders of secured claims."  American Gen. Fin., Inc. v. Paschen (In re Paschen), 296 F.3d 1203, 1205 (11th Cir. 2002) (internal quotation marks omitted). A Chapter 13 debtor who wishes to keep collateral securing a claim may do so over the claimant's objection by paying the claimant the replacement value of the collateral, a process known as a "cramdown."  11 U.S.C. § 1325(a)(5)(B).  If the collateral's value is less than the amount of the debt, a debtor exercising a cramdown may bifurcate the claim into secured and unsecured portions under § 506(a) and pay only the secured amount.  Paschen, 296 F.3d at 1296.

There are certain exceptions to a Chapter 13 debtor's power to bifurcate an undersecured claim in a cramdown.  One exception protects mortgages secured by the debtor's principal residence.  See Nobleman v. Am. Sav. Bank, 508 U.S. 324, 327 (1993); 11 U.S.C. § 1322(b)(2). A second exception, more pertinent to this case, prohibits bifurcation and cramdown of a claim under § 506(a) . . .

> if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor. . . .

-3-

11 U.S.C. § 1325(a) (hanging paragraph)[2]; *see also* <u>DaimlerChrysler Fin. Servs. Am. LLC v. Barrett (In re Barrett)</u>, 543 F.3d 1239, 1242-43 (11th Cir. 2008).  A creditor obtains a purchase-money security interest ("PMSI") in collateral when the debtor incurs an obligation "as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."  ALA. CODE § 7-9A-103(a)(2).  When a creditor holds a PMSI on the debtor's vehicle and the underlying debt was incurred within 910 days prior to the debtor's bankruptcy, the creditor holds what is called a "910-claim" and is entitled to full payment on its claim, regardless of the vehicle's value, if the debtor chooses to cram down the claim.

Scarver kept the Toyota Corolla and promised to pay the full amount of 1st Franklin's claim as a 910-claim.[3]  Now that she has wrecked the Corolla and experienced a shortfall on the insurance proceeds, the question is whether she must pay 1st Franklin the full amount of its claim in order to obtain a Chapter 13 discharge in this case.

### B.  Post-Confirmation Plan Modification

Anytime after a Chapter 13 plan is confirmed, but before plan payments are completed, the debtor, trustee, or any unsecured creditor may seek to modify the plan.  11 U.S.C. § 1329(a);

---

[2]  The hanging paragraph of § 1325(a) was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").  Prior to its enactment, a Chapter 13 debtor exercising a cramdown could use 11 U.S.C. § 506(a) to bifurcate all debts that were undersecured by a motor vehicle.

[3]  However, Scarver probably did not have to do that.  The loan documents attached to 1st Franklin's proof of claim indicate that most of the money loaned was used to pay off an earlier loan, suggesting that Scarver owned or had use of the Corolla before she incurred the debt.  If so, 1st Franklin did not have a PMSI and was not entitled to "910" treatment.  *See* <u>In re Horn</u>, 338 B.R. 110, 113-14 (Bankr. M.D. Ala. 2006).

-4-

<u>Meza v. Truman (In re Meza)</u>, 467 F.3d 874, 878 (5th Cir. 2006).  Post-confirmation plan

modification entails three basic requirements.  First, the modification must comply with one of

the provisions of § 1329(a), which, as relevant to this case, requires the modifying plan to either:

> (1) increase or reduce the amount of payments on claims of a
> particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; [or]
>
> (3) alter the amount of the distribution to a creditor whose claim is
> provided for by the plan to the extent necessary to take account of
> any payment of such claim other than under the plan[.]

11 U.S.C. § 1329(a).[4]  Second, the modification must comply with the requirements for plan

confirmation set out in 11 U.S.C. §§ 1322(a) and 1325(a), and may treat claims as permitted by

11 U.S.C. §§ 1322(b)(2) and 1323(c).  11 U.S.C. § 1329(b)(1).  Third, the modification cannot

extend the payment period beyond five years after the first plan payment was due, and cannot

extend the original commitment period of the debtor's disposable income except for cause.  11

U.S.C. § 1329(c).  A party seeking to modify a confirmed plan under § 1329 need not

demonstrate an unforseen substantial change in the debtor's circumstances.  <u>In re Thomas</u>, 291

B.R. 189, 193 (Bankr. M.D. Ala. 2003).  "The plan as modified becomes the plan unless, after

notice and a hearing, such modification is disapproved."  11 U.S.C. § 1329(b)(2).

Scarver's plan modification complies with § 1329(c).  Whether it complies with §§

1329(a) and (b)(1) depends on whether Scarver can reclassify 1st Franklin's secured claim after

her payment plan has been confirmed.

---

[4]  There is a fourth alternative in which the modification may reduce payments based on
the cost of the debtor's health insurance, *see* 11 U.S.C. § 1329(a)(4), but that provision is
inapplicable to this case.

## C. Post-Confirmation Claim Reclassification

For more than twenty-five years, courts have been divided over whether a Chapter 13 debtor has the power to reclassify a secured claim after plan confirmation. The current minority view holds that a Chapter 13 debtor may not reclassify a secured claim after plan confirmation under any circumstances.[5] The current majority view holds that a Chapter 13 debtor may surrender collateral and reclassify any resulting deficiency balance from a secured debt to an unsecured debt, if done in good faith.[6] This has been the prevailing view for the past ten years.

---

[5] *See* Ruskin v. DaimlerChrysler Servs., N.A., LLC (In re Adkins), 425 F.3d 296 (6th Cir. 2005); Chrysler Fin. Corp. v. Nolan (In re Nolan), 232 F.3d 528 (6th Cir. 2000); Chrysler Fin. Corp. v. Nolan (In re Nolan), 234 B.R. 390 (M.D. Tenn. 1999); Sharpe v. Ford Motor Credit Co. (In re Sharpe), 122 B.R. 708 (E.D. Tenn. 1991); In re Ramos, 540 B.R. 580 (Bankr. N.D. Tex. 2015); In re Fanning, 2014 WL 3672132 (Bankr. N.D. Ga. Apr. 20, 2014); In re White, 2008 WL 5071762 (Bankr. M.D. Ala. Nov. 25, 2008) (Williams, B.J.); In re Belcher, 369 B.R. 465 (Bankr. E.D. Ark. 2007); In re Arguin, 345 B.R. 876 (Bankr. N.D. Ill. 2006); In re Wilcox, 295 B.R. 155 (Bankr. W.D. Okla. 2003); In re Cameron, 274 B.R. 457 (Bankr. N.D. Tex. 2002); In re Coffman, 271 B.R. 492 (Bankr. N.D. Tex. 2002); In re Jackson, 280 B.R. 703 (Bankr. S.D. Ala. 2001); In re Barclay, 276 B.R. 276 (Bankr. N.D. Ala. 2001); In re Adams, 270 B.R. 263 (Bankr. N.D. Ill. 2001); In re Smith, 259 B.R. 323 (Bankr. S.D. Ill. 2001); In re Goos, 253 B.R. 416 (Bankr. W.D. Mich. 2000); In re Coleman, 231 B.R. 397 (Bankr. S.D. Ga. 1999); In re Meeks, 237 B.R. 856 (Bankr. E.D. Ark. 1997); In re Dunlap, 215 B.R. 867 (Bankr. E.D. Ark. 1997); In re Banks, 161 B.R. 375 (Bankr. S.D. Miss. 1993); In re Holt, 136 B.R. 260 (Bankr. D. Idaho 1992); Matter of Abercrombie, 39 B.R. 178 (Bankr. N.D. Ga. 1984).

[6] *See* Bank One, N.A. v. Leuellen, 322 B.R. 648 (S.D. Ind. 2005); In re Anderson, 545 B.R. 174 (Bankr. N.D. Miss. 2015); In re Jones, 538 B.R. 844 (Bankr. W.D. Okla. 2015); In re Tucker, 500 B.R. 457 (Bankr. N.D. Miss. 2013); In re Brown, 463 B.R. 134 (Bankr. S.D. Ind. 2011); In re Hutchison, 449 B.R. 403 (Bankr. W.D. Mo. 2011); In re Odlin, 2010 WL 3791486 (Bankr. D. Or. Sept. 22, 2010); In re Boykin, 428 B.R. 662 (Bankr. D.S.C. 2009); In re Sellers, 409 B.R. 820 (Bankr. W.D. La. 2009); In re Davis, 404 B.R. 183 (Bankr. S.D. Tex. 2009); In re Disney, 386 B.R. 292 (Bankr. D. Colo. 2008); In re Berendt, 2008 WL 4410995 (Bankr. D. Or. Sept. 22, 2008); In re Amador, 2008 WL 1336962 (Bankr. S.D. Fla. Apr. 9, 2008); In re Lane, 374 B.R. 830 (Bankr. D. Kan. 2007); In re Ross, 373 B.R. 656 (Bankr. W.D. Mo. 2007); In re Mellors, 372 B.R. 763 (Bankr. W.D. Pa. 2007); In re Marino, 349 B.R. 922 (Bankr. S.D. Fla. 2006); In re Jefferson, 345 B.R. 577 (Bankr. N.D. Miss. 2006); In re Bell, 339 B.R. 309 (Bankr. W.D.N.Y. 2006); In re Ward, 348 B.R. 545 (Bankr. D. Idaho 2005); In re Mason, 315 B.R. 759 (Bankr. N.D. Cal. 2004); In re Taylor, 297 B.R. 487 (Bankr. E.D. Tex. 2003); In re Arencibia,

**1. The Minority View: Post-Confirmation Claim Reclassification is Prohibited**

The leading cases of the minority camp are a pair of pre-BAPCPA decisions from the Sixth Circuit. *See* Ruskin v. DaimlerChrysler Servs., N.A., LLC (In re Adkins), 425 F.3d 296 (6th Cir. 2005); Chrysler Fin. Corp. v. Nolan (In re Nolan), 232 F.3d 528 (6th Cir. 2000). In Nolan, the debtor owed $12,000 on a vehicle that she sought to cram down, and her confirmed plan bifurcated the claim into a secured portion of $8,000 and an unsecured portion of $4,000. Nolan, 232 F.3d at 529. When her vehicle became undependable due to high use and lack of proper maintenance, the debtor moved to modify her plan in order to surrender the vehicle and reclassify the deficiency balance as an unsecured claim. Id. at 529-30. The Sixth Circuit held that the debtor's proposed modification was *per se* impermissible under § 1329, id. at 532, *overruling, e.g.*, In re Jock, 95 B.R. 75 (Bankr. M.D. Tenn. 1989), and articulated five rationales for its holding.

First, the Sixth Circuit explained that § 1329(a) "does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim." Nolan, 232 F.3d at 532. Instead, it held that § 1329(a)(1) "only affords the debtor a right to request alteration of the amount or timing of specific payments." Id. It further held that § 1329(b)(1) could not "enlarge the modifications" permitted by § 1329(a) because § 1329(b)(1) "does not apply unless the proposed

---

2003 WL 21004969 (Bankr. S.D. Fla. Apr. 1, 2003); In re Hernandez, 282 B.R. 200 (Bankr. S.D. Tex. 2002); In re Knappen, 281 B.R. 714 (Bankr. D.N.M. 2002); In re Zieder, 263 B.R. 114 (Bankr. D. Ariz. 2001); In re Townley, 256 B.R. 697 (Bankr. D.N.J. 2000); In re Day, 247 B.R. 898 (Bankr. M.D. Ga. 2000); In re Conley, 2000 WL 1805324 (Bankr. E.D. Va. Sept. 28, 2000); In re Johnson, 247 B.R. 904 (Bankr. S.D. Ga. 1999); In re Waller, 224 B.R. 876 (Bankr. W.D. Tenn. 1998); In re White, 169 B.R. 526 (Bankr. W.D.N.Y. 1994); In re Anderson, 153 B.R. 527 (Bankr. M.D. Tenn. 1993); In re Rimmer, 143 B.R. 871 (Bankr. W.D. Tenn. 1992); In re Frost, 96 B.R. 804 (Bankr. S.D. Ohio 1989); In re Jock, 95 B.R. 75 (Bankr. M.D. Tenn. 1989); In re Stone, 91 B.R. 423 (Bankr. N.D. Ohio 1988).

modification first complies with" § 1329(a).  Id.  The court reasoned that § 1329(a) "prohibit[s]" a modification that "reduces the claim" of a secured creditor and "add[s] a claim to the class of unsecured creditors[.]"  Id.

Second, the Sixth Circuit reasoned that reclassification of a secured claim would violate § 1325(a)(5)(B)(ii)'s "mandate[] that a secured claim is fixed in amount and status and must be paid in full once it has been allowed."  Id. at 533; *see also* id. at 532 n.8 ("For section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, the secured claim must not be subject to modification throughout the life of the plan.").[7]

Third, the Sixth Circuit stated that post-confirmation claim reclassification "would contravene" 11 U.S.C. § 1327(a)[8] "because a contrary interpretation postulates an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset."  Id. at 533.  The court explained the "injustice," whenever the collateral's "attractiveness" diminishes,  of permitting debtors "such wide latitude to subject the creditor to their whims throughout the life of the plan."  Id. at 533-34.  It also noted that "debtors

_____

[7]  Section 1325(a)(2)(B)(ii) requires, when the debtor exercises a cramdown, that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]" In other words, a Chapter 13 debtor who seeks to cram down a secured claim must pay the creditor the full value of the collateral as of the date of confirmation.  This protects the secured creditor from post-confirmation depreciation of its collateral.

[8]  "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

-8-

would obtain a *double* reduction in debt in many cases, because the creditor already experiences a cram down in valuation at the time of confirmation." Id. at 534 (emphasis in original). The court concluded that Congress did not intend "to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan." Id.

Fourth, the Sixth Circuit reasoned that permitting post-confirmation claim reclassification "would create an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*, even though the debtor could revalue or reclassify the claim whenever the collateral *depreciated*." Id. (emphasis in original). This, according to the court, is because § 1329(a) only permits the debtor, the trustee, and unsecured creditors to modify a plan. The court added that the debtor would be able to "reclassify a secured creditor's claim while simultaneously evading the tradeoff risks and responsibilities attending conversion or dismissal under Chapter 7."[9] Id.

Finally, the Sixth Circuit held that post-confirmation claim reclassification "is at odds with the plain language" of § 1329(a) because "the terms 'claim' and 'payment' have two different meanings in the Bankruptcy Code." Id.; *see also* In re Banks, 161 B.R. 375, 378 (Bankr. S.D. Miss. 1993). "Claim" is defined by the Bankruptcy Code as a "right to payment[.]" 11 U.S.C. § 101(5)(A). Defining "payment" as "'the delivery of money or other value by a

---

[9] Citing the district court's opinion, the Sixth Circuit noted in a parenthetical that the "Chapter 7 alternative requires [the] debtor to surrender nonexempt property to a trustee, and to lose [the] opportunity for discharge for at least six [now four] years; Chapter 13 avoids these onerous burdens by allowing [the] debtor to retain all personal and real property, to restructure debts, and to enjoy greater likelihood of future credit opportunities. . . ." Nolan, 232 F.3d at 534 (citing Chrysler Fin. Corp. v. Nolan, 234 B.R. 390, 397 (M.D. Tenn. 1999)).

debtor to a creditor[,]'" Nolan, 232 F.3d at 535 (quoting BLACK'S LAW DICTIONARY 1129 (6th ed. 1990)), the court reasoned that "if the term 'payments' in section 1329(a) referred to the secured claim itself rather than to individual payments, the separate use of 'claims' in section 1329(a)(3) would be superfluous." Id. "Read with the benefit of proper term definitions," the court continued, § 1329(a) "clearly indicates that modifications after plan confirmation cannot alter a *claim* (a right to a remedy or payment of a certain total amount), but can extend or compress payments and reduce or increase the *amount* of the delivery of value planned as an eventual satisfaction for the creditor's claim." Id.

In Adkins, the Sixth Circuit extended its rationale beyond § 1329, to situations where the creditor repossesses the collateral without the debtor's volition. The debtor in that case crammed down a claim secured by his vehicle and, after his plan was confirmed, fell behind on his payments. Adkins, 425 F.3d at 297-98. The creditor moved for relief from the automatic stay to repossess and sell the vehicle, and to have any deficiency balance fully paid as a secured claim; the trustee objected to the latter request, arguing instead that the deficiency should be treated as unsecured and that Nolan was factually and procedurally distinguishable. Id. at 297-98, 301-02.

The Sixth Circuit rejected the trustee's attempt to distinguish Nolan, explaining that it "relied heavily on the language of sections 1325 and 1327." Id. at 302. It reemphasized that "'[f]or section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, *the secured claim must not be subject to modification throughout the life of the plan*.'" Id. (quoting Nolan, 232 F.3d at 532 n.8) (emphasis in original). The court explained that post-confirmation claim reclassification allows "the debtor to shift the burden of depreciation she originally accepted when she chose to retain her collateral from herself to the

-10-

secured creditor[,]" which "is especially unfair in those cases where the secured creditor has already borne the burden of depreciation resulting from a cram down of the secured claim over the creditor's objection." Id. at 303. This rationale, according to the court, "equally applies to cases in which the Debtor's actions (i.e., default) have provided cause for the secured creditor to have the automatic stay lifted so the creditor may repossess the collateral." Id.

The Sixth Circuit also rejected a theory, which the Court will discuss later, that a secured claim can be reclassified under 11 U.S.C. § 502(j).[10] Id. at 304. That section provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause[,]" and that "[a] reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). The Sixth Circuit explained, however, that § 502(j) is inapplicable because "the literal language of section 502(j) addresses only the 'allowance' or 'disallowance' of claims, not the reclassification of an already-allowed claim." Adkins, 425 F.3d at 304.

Although much of the Sixth Circuit's rationale in Nolan and Adkins was based on pre-BAPCPA bankruptcy law, those cases are still controlling in the Sixth Circuit despite BAPCPA's enactment. See In re Belcher, 369 B.R. 465, 469 (Bankr. E.D. Ark. 2007). This Court likewise applied Nolan's rationale to a post-BAPCPA case the last time it considered the issue. See In re White, 2008 WL 5071762 (Bankr. M.D. Ala. Nov. 25, 2008) (Williams, B.J.).

**2. The Majority View: Post-Confirmation Claim Reclassification is Permissible**

The majority view has attacked Nolan and Adkins with two separate lines of reasoning. The first line of reasoning directly rejects the Sixth Circuit's interpretation of § 1329 and is

---

[10] Adkins was a 2-1 decision, with the dissenting judge seeking to distinguish Nolan and remand for reconsideration under §§ 502(j) and 506(a). See Adkins, 425 F.3d at 306-09 (Moore, J., dissenting).

represented by <u>Bank One, N.A. v. Leuellen</u>, 322 B.R. 648 (S.D. Ind. 2005), another pre-BAPCPA case. The debtors in <u>Leuellen</u> crammed down two claims secured by their vehicles in their confirmed plan. <u>Leuellen</u>, 322 B.R. at 650-51. When Mrs. Leuellen lost her job six months later the debtors could no longer afford two cars, so they sought to modify their plan by surrendering her vehicle and treating any deficiency balance as unsecured. <u>Id.</u> at 651.

In permitting the modification, the <u>Leuellen</u> court first explained that § 1322(b)(8),[11] which is incorporated by § 1329(b)(1), "contemplates surrender of collateral as a form of payment, and section 1322(b) applies without qualification to modifications under section 1329(a)." <u>Id.</u> at 652. Section 1325(a)(5), continued the court, must be considered as a whole to be a "requirement" of plan confirmation that is also incorporated by § 1329(b)(1), and can be satisfied in one of three ways, including surrender of collateral under § 1325(a)(5)(C). <u>Id.</u> at 652-53. According to the court, therefore, § 1329(b)(1) permits a debtor to surrender collateral as part of a post-confirmation plan modification. <u>Id.</u> at 653. Pursuant to § 506(a), a debtor's surrender of collateral "has the effect of transforming what had been a completely secured claim into a secured claim up to the value of the collateral," with any deficiency balance becoming unsecured. <u>Id.</u> at 654. Finally, the court concluded, the modification complied with § 1329(a) because, as allowed under § 1329(a)(1), it "'reduce[d] the amount of payments on the creditor's secured claim from the amount stated in the original plan. . . .'" <u>Id.</u> (quoting 11 U.S.C. § 1329(a)(1)) (brackets in original).

---

[11] Subject to §§ 1322(a) and (c), a Chapter 13 plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor[.]" 11 U.S.C. § 1322(b)(8).

-12-

The Leuellen court also extensively criticized Nolan.  First, the court argued that the

Sixth Circuit's refusal to permit modification of "claims" as opposed to "payments" in §

1329(a)(1) "ignores the import of other companion [Bankruptcy] Code sections and reads an

exception into section 1329 which simply does not exist."  Id. at 656 (internal quotation marks

omitted).  Citing § 1323(c),[12] which is incorporated by § 1329(b)(1), the court explained that

Congress envisioned that "[a] secured creditor's rights in general may be affected by a

modification."  Id.

Second, the Leuellen court disagreed with the Sixth Circuit's argument that post-

confirmation claim reclassification would violate § 1325(a)(5)(B)(ii), explaining that §

1325(a)(5)(C)'s surrender option was not subject to the same limitation as cramdown.  Id. at 658.

The court acknowledged the Sixth Circuit's concerns that such a modification would shift the

risk of post-confirmation depreciation loss from the debtor to the secured creditor, but criticized

the suggestive tone of the Sixth Circuit's language as failing to "accurately present the issue"

because the debtor could have good faith reasons for seeking the modification.  Id. at 659

(criticizing the use of "whims," "subterfuge," and "windfall" in Nolan to describe the debtor's

position).  The court further explained that "secured creditors are not as defenseless" as the Sixth

Circuit implied because secured creditors can object to initial plan confirmation to ensure that

they will receive sufficient payment to compensate them for any depreciation of their collateral.

Id. (citing In re Townley, 256 B.R. 697, 699-700 (Bankr. D.N.J. 2000), and Jock, 95 B.R. at 78).

---

[12]  "Any holder of a secured claim that has accepted or rejected the plan is deemed to have
accepted or rejected, as the case may be, the plan as modified, *unless the modification provides
for a change in the rights of such holder from what such rights were under the plan before
modification*, and such holder changes such holder's previous acceptance or rejection."  11
U.S.C. § 1323(c) (emphasis added).

Thus, to shift the burden of collateral depreciation completely onto debtors "upends th[e] balance" of competing Chapter 13 purposes (namely, payment of debts, avoidance of Chapter 7 liquidation, and fair distribution to creditors), according to the <u>Leuellen</u> court, "and grants a windfall to creditors by removing permanently the risk that collateral will depreciate more than expected." <u>Id.</u> at 660. This has "[t]he distorted effect[]" of forcing debtors "to foresee all contingencies at the time the plan is confirmed." <u>Id.</u> (criticizing <u>In re Jackson</u>, 280 B.R. 703, 705 (Bankr. S.D. Ala. 2001)).[13]

Finally, the <u>Leuellen</u> court pointed out secured creditors would retain sufficient protection against abusive modifications (*e.g.*, situations where the debtor abused the collateral) because under § 1325(a)(3), as incorporated by § 1329(b)(1), a modified plan must be proposed in good faith. <u>Id.</u> at 661. Thus, a *per se* prohibition on post-confirmation surrender of collateral and claim reclassification would not be necessary to protect secured creditors from abuse. <u>Id.</u>

The second line of reasoning by which the majority view has attacked <u>Nolan</u> and <u>Adkins</u> is through reconsideration of the claim under § 502(j), as articulated by <u>In re Zieder</u>, 263 B.R. 114 (Bankr. D. Ariz. 2001). In <u>Zieder</u>, the debtors surrendered a vehicle they had previously crammed down when their minor son had a wreck on another vehicle because they could no longer afford their payments, and sought to treat the deficiency balance as unsecured. <u>Zieder,</u>

---

[13] *Cf.* <u>Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)</u>, 12 F.3d 1008, 1011 (11th Cir. 1994) ("Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation. The House Report suggests that modification is permissible where problems such as a 'natural disaster, a long-term layoff, or family illness or accidents with attendant medical bills' prevent compliance with the original plan. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 125 (1977). Fueling the creation of flexible modification provisions was the simple recognition that '[t]he problems which caused financial distress to begin with, . . . do not magically disappear on the filing of a petition under chapter XIII.' S. Rep. No. 95-989, 95th Cong., 2d Sess. 12 (1978).").

263 B.R. at 116. In permitting the modification, the <u>Zieder</u> court distinguished <u>Nolan</u> and explained that § 502(j) "permits reconsideration of claims 'according to the equities of the case.'" <u>Id.</u> at 117 (quoting 11 U.S.C. § 502(j)). The court reasoned that since the collateral no longer existed for the claim to attach to, it was unsecured pursuant to § 506(a), and that this was adequate grounds for reconsideration of the claim under § 502(j). <u>Id.</u> The court added that "because the Code provision deals extensively with the effect such reconsideration might have on distributions already made on claims, it contemplates that such reconsideration might occur after confirmation." <u>Id.</u> Having reconsidered the claim under § 502(j) and determined it to be unsecured, the court noted that a modification reducing payment on the secured claim would "'reduce the amount of payments on claims of a particular class provided for by the plan,'" which the court considered to be permitted both by the express language of § 1329(a)(1) and <u>Nolan</u>. <u>Id.</u> at 118 (quoting 11 U.S.C. § 1329(a)(1)).

Most of the recent decisions that have adhered to the majority view have relied on both § 502(j) and the <u>Leuellen</u> court's interpretation of § 1329 as grounds to permit modifications that surrender collateral and reclassify deficiency balances as unsecured. *E.g.*, <u>In re Anderson</u>, 545 B.R. 174, 179-82 (Bankr. N.D. Miss. 2015); <u>In re Sellers</u>, 409 B.R. 820, 829-30 (Bankr. W.D. La. 2009).


### III. ANALYSIS

After reviewing the leading cases on each side of the issue, this Court is persuaded that the majority view is correct. When liquidation of collateral securing a claim results in a deficiency balance, that claim is no longer secured under the plain language of § 506(a) and its

secured status may be reconsidered under § 502(j). When such a claim is no longer secured, the debtor may modify the plan post-confirmation to treat the claim as unsecured and reduce payments to it under § 1329(a)(1). Or, if the collateral has not been liquidated, the debtor may modify the plan post-confirmation to surrender the collateral pursuant to §§ 1325(a)(5)(C) and 1329(b)(1), may treat any deficiency as unsecured pursuant to § 506(a), and may reduce payment on it under § 1329(a)(1).

### A.  Rebuttal of <u>Nolan</u> and <u>Adkins</u>

The Court agrees with the majority view's criticism of <u>Nolan</u> and <u>Adkins</u>. A striking characteristic of the Sixth Circuit's opinion in <u>Nolan</u> is that it spent considerable effort explaining why <u>Jock</u> and its progeny are wrong, without explaining why its own interpretation is correct. To reach the result that it did, however, the Sixth Circuit erected several artificial restrictions on post-confirmation plan modification that are not grounded in the plain language of the relevant statutes. The illogical result of these restrictions is amply illustrated by <u>Adkins</u>, which rested almost entirely on <u>Nolan</u>'s faulty reasoning.

### 1.  Interpreting 11 U.S.C. § 1329(a)

First, the Sixth Circuit read § 1329(a) in isolation, rather than in context with the rest of § 1329, when nothing in the overall statute suggests that § 1329(a) is a prerequisite to application of § 1329(b)(1). *See* <u>Nolan</u>, 232 F.3d at 532; *but cf.* <u>Yates v. United States</u>, 135 S. Ct. 1074, 1079 (2015) (overturning a conviction under the Sarbanes-Oxley Act for concealment of undersized fish as "tangible objects" because the statutory context indicated that the term referred to something used to record or preserve information). The Court, meanwhile, reads § 1329(b)(1)

-16-

in conjunction with § 1329(a) as permitting the movant to exercise Chapter 13 plan powers under §§ 1322(b) and 1325(a)(5)(C) in satisfaction of § 1329(a) requirements.

Even if, however, the Sixth Circuit was correct in reading § 1329(a) as a prerequisite to § 1329(b)(1), it created a second artificial restriction within § 1329(a) by asserting that it prohibits the reclassification of secured claims because it "does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim." Nolan, 232 F.3d at 532. But nothing in § 1329(a) expressly *prohibits* the reclassification of secured claims either because the statute is silent on the subject. Instead, § 1329(a) merely mandates that any one of four separate requirements be met, and nothing more.

The Sixth Circuit created a third artificial barrier within § 1329(a)(1) by distinguishing "payments" from "claims" and using this distinction to prohibit reduction of "claims." Id. at 535. But again, § 1329(a)(1) does not prohibit anything. It instead provides for the possibility of compliance with § 1329(a) through the reduction of payments towards a class[14] of claims; the modification's effect on the claim itself is irrelevant in determining whether the literal language of § 1329(a)(1) has been satisfied. Moreover, the Sixth Circuit's reasoning ignores an alternative method of compliance in § 1329(a)(3), which contemplates the offset of all or part of a secured

---

[14]  Implicit is the concept that each secured claim is an individual class. Section 1322(a)(3) requires "the same treatment for each claim within a particular class[,]" so the individualized treatment of secured claims in Chapter 13 plans necessitates the conclusion that each secured claim is in its own class in order to comply with § 1322(a)(3). *See generally* Leuellen, 322 B.R. at 657-58 (discussing individualized treatment of secured creditors in Chapter 13). Scarver appears to have acted on this assumption when she confirmed her initial plan because she did not designate 1st Franklin to receive pre-confirmation adequate protection payments under § 1326(a)(1), but did designate her other secured creditors to receive them. (Doc. 2).

-17-

claim through surrender or liquidation of the collateral outside the plan as a payment on the claim.

Fourth, the Sixth Circuit reads § 1329(a)'s language that a plan can be modified "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim," to conclude that secured creditors are prohibited from modifying a plan under § 1329, then raises the specter of "an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*, even though the debtor could revalue or reclassify the claim whenever the collateral *depreciated*." Id. at 534 (emphasis in original). That is simply wrong. Being secured and being unsecured are not mutually exclusive concepts for a creditor who is *undersecured*. Instead, part of the creditor's claim would be secured and part of it would be unsecured pursuant to § 506(a), and the creditor would have standing under § 1329(a) as "the holder of an allowed unsecured claim" to modify the plan and treat more of its claim as being secured in the event that the collateral appreciates. The only type of creditor who does not have standing to modify a plan under § 1329 is one who is fully secured, and a fully secured creditor would have no reason to modify the plan if the collateral appreciates because its claim is already being paid in full.

Section 1329(a) is most naturally read as a singular mandate that one of four alternative requirements be complied with in the modification. Two of those options are relevant to this issue. Section 1329(a)(1) can be met by a showing that payments on a class of claims have been increased or reduced by the modification. Section 1329(a)(3) can be met by a showing that distribution to a particular creditor is being altered to offset payment on that creditor's claim outside of the plan. Section 1329(a) entails no other restrictions or limitations on post-

-18-

confirmation plan modification, and the Sixth Circuit's attempts to construct them conflict with the statute's plain language.

## 2. Applying 11 U.S.C. § 1329(b)(1)

Pursuant to § 1329(b)(1), post-confirmation plan modification incorporates most of the powers and requirements of original plan confirmation through §§ 1322(a) and (b), 1323(c), and 1325(a). As the <u>Leuellen</u> court succinctly stated: "[s]ection 1322(a) governs mandatory plan content; section 1322(b) provides permissive plan content; section 1323(c) governs the effect of modification on original acceptance or rejection of a plan; and section 1325(a) establishes the requirements for confirmation." <u>Leuellen</u>, 322 B.R. at 652 n.2. Application of these provisions to post-confirmation plan modification provides a movant with tremendous flexibility in dealing with changes in circumstances that arise during the bankruptcy. *See* <u>Meza</u>, 467 F.3d at 877.

### a. Reconsideration of a Claim Secured by Liquidated Collateral

The Bankruptcy Code defines a secured claim as "[a]n allowed claim of a creditor secured by a lien *on property* in which the estate has an interest, or that is subject to setoff. . . ." 11 U.S.C. § 506(a)(1) (emphasis added). It defines "lien" as a "charge against or interest *in property* to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (emphasis added). To have a secured claim in bankruptcy, the creditor must have recourse in property; if there is no property, the creditor's claim is not secured. Thus, when all of the collateral securing a claim is liquidated and paid to the creditor, any remaining deficiency claim is no longer secured within the meaning of § 506(a).

"A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11

-19-

U.S.C. § 502(j). Cause for reconsideration of a claim is "discretionary with the bankruptcy court," but should typically be determined in conjunction with the standard set out in Rule 60(b). <u>Fidelity Fin. Servs., Inc. v. Montgomery Cnty. Dep't of Human Res. (In re Davis)</u>, 237 B.R. 177, 182 (M.D. Ala. 1999); *see also* FED. R. BANKR. P. 9024 ("reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c)"). Cause for reconsideration of an order under Rule 60(b) can include surprise, newly discovered evidence, inequity from continued application of the order, or any other reason that justifies relief. FED. R. BANKR. P. 9024, incorporating FED. R. CIV. P. 60(b). Liquidation of the collateral after confirmation is, in this Court's view, cause for reconsideration of a secured claim.

The Sixth Circuit held that the secured status of a claim cannot be reconsidered under § 502(j) because "the literal language . . . addresses only the 'allowance' or 'disallowance' of claims, not the reclassification of an already-allowed claim." <u>Adkins</u>, 425 F.3d at 304. That reasoning cuts too fine a distinction because allowance or disallowance of a claim is not a simple yes-or-no proposition. There is no time limitation on "allowance," which is defined as "the act of allowing"; in that sense, the "act of allowing" is much the same as the grant of a license – it can be revoked at any time. Also, claims have numerous distinctive characteristics: they differ in the amounts owed; they may be entitled to priority for distributions; they may be unenforceable; they may be non-dischargeable; they may be filed late; and they may or may not be secured. Any of these aspects of a claim may be reconsidered if there is sufficient cause and equitable grounds to do so. For example, the secured status of a claim might be reconsidered and disallowed because attachment or perfection of the security interest is found to be defective under state law,

or because it attached within the preferential period of 11 U.S.C. § 547(b).  Contrary to the Sixth Circuit's view, the secured status of a claim may also be reconsidered and disallowed if there is no collateral securing the claim.

If a secured claim is reconsidered under § 502(j) and is determined to be unsecured, § 1329(b)(1) permits a movant seeking a post-confirmation plan modification to incorporate the plan provisions of § 1322(b), including the power to "provide for the payment of all or part of a claim against the debtor. . . ."  11 U.S.C. § 1322(b)(8).  Since the claim would be unsecured, it would no longer be subject to § 1325(a)(5), including the requirement in § 1325(a)(5)(B)(ii) that secured claims be fully paid.  The modification's treatment of the claim would satisfy § 1329(b)(1).

### b.  Surrender of Collateral as Part of the Modification

Even if the debtor retains the collateral, she can subsequently modify her plan to surrender the collateral and treat the deficiency balance as unsecured.  Section 1329(b)(1) incorporates § 1325(a)(5), which requires that secured claims be treated in one of three ways: (A) the creditor accepts the proposed treatment of its claim, (B) the debtor keeps the collateral as a cramdown and pays the creditor the full replacement value of the collateral, or (C) the debtor surrenders the collateral.  The requirement in § 1325(a)(5)(B)(ii) that a creditor receive payment on the full value of its secured claim applies only if the debtor chooses to cram down the claim over the creditor's objection; if the debtor surrenders the collateral, or if the creditor accepts different treatment under the plan, the debtor is not required to fully pay the secured creditor.  11 U.S.C. § 1325(a)(5).

Section 1329(b)(1) adopts § 1325(a)(5) in its entirety. The Sixth Circuit argued that "[f]or section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor [initially] chooses to retain her collateral, the secured claim must not be subject to modification throughout the life of the plan." Adkins, 425 F.3d at 302 (emphasis removed); Nolan, 232 F.3d at 532 n.8. Nothing in the statutory language of §§ 1325(a)(5) or 1329(b)(1) indicates that post-confirmation modifications are to be treated any differently than plans proposed for initial confirmation; § 1329(b)(1) incorporates § 1325(a)(5) without qualification. Section 1329(b)(1)'s inclusion of § 1323(c) as being applicable to post-confirmation plan modifications further bolsters the Court's conclusion. Also, as the Leuellen and Jock opinions have noted, secured creditors are perfectly capable of bargaining (and are expected to bargain) for payments sufficient to protect themselves in the event of such a modification at initial confirmation. *E.g.*, Leuellen, 322 B.R. at 659; Townley, 256 B.R. at 699-700. Finally, the Sixth Circuit's concerns about the unfairness of secured creditors experiencing a double reduction on their secured claims due to post-confirmation claim reclassification, Adkins, 425 F.3d at 303; Nolan, 232 F.3d at 534, are largely mitigated by prohibitions on bifurcation of claims secured by certain types of collateral at the initial confirmation. *See* 11 U.S.C. §§ 1322(b)(2) and 1325(a) (hanging paragraph). Thus, when a debtor modifies a plan to surrender collateral for a claim she had previously crammed down, she is no longer subject to § 1325(a)(5)(B)(ii). Under § 506(a), the deficiency balance on the claim becomes unsecured.

In the context of 910-claims, the hanging paragraph of § 1325(a)(5) renders the bifurcation provision of § 506(a) inapplicable in determining the secured status of the deficiency claim when the debtor surrenders the vehicle under § 1325(a)(5)(C). *See* 11 U.S.C. § 1325(a)

-22-

(hanging paragraph). That does not, however, mean that the deficiency 910-claim remains secure

when the vehicle is initially crammed down but surrendered after confirmation. In Alabama (and

presumably every other State), a secured creditor's "acceptance of collateral in full or partial

satisfaction of the obligation it secures . . . transfers to the secured party all of a debtor's rights in

the collateral" and "discharges the security interest. . . ." ALA. CODE § 7-9A-622(a)(2)-(3); *cf.*

Barrett, 543 F.3d at 1246 (parties look to state law when § 1325(a)'s hanging paragraph removes

application of § 506(a)).[15] Therefore, post-confirmation surrender of collateral leaves an

undersecured creditor with an unsecured deficiency balance under § 506(a) and state law.

### c. Good Faith Requirement

Much of the Sixth Circuit's reasoning in Nolan appears to rest on a concern that debtors

will abuse their post-confirmation modification power and unfairly prejudice the secured

creditor. Quoting In re Banks, 161 B.R. 375, 377 (Bankr. S.D. Miss. 1993), which was in turn

quoting Norton's bankruptcy treatise, the Sixth Circuit stated:

> The boldest and most frequent attempt by debtors to use the
> postconfrmation modification to alter the treatment of secured
> claims occurs when the collateral no longer appears to have a value
> which justifies full payment of the balance of the secured claim. . .
> . The collateral having lost its attractiveness, the debtor proposes
> an amendment to the plan so as . . . to surrender the now-
> unattractive collateral to the creditor[, reduce the secured claim to
> the collateral's diminished value, and pay pennies on the dollar of
> the unsecured balance] – all over the objection of the holder of the
> secured claim.

Nolan, 232 F.3d at 533. The Sixth Circuit "reject[ed] the notion that debtors have such wide

---

[15]  In light of Barrett, Scarver cannot surrender the $2,800 of insurance proceeds in full
satisfaction of the $4,200 still due on 1st Franklin's claim. 1st Franklin still has an unsecured
claim for the $1,400 deficiency balance, though the Court acknowledges that may be cold
comfort to 1st Franklin because Scarver is paying unsecured creditors nothing.

latitude to subject the creditor to their whims throughout the life of the plan." Id. at 534. It added that "[t]here is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan." Id.

The Court acknowledges that post-confirmation plan modification puts secured creditors at some risk of being unfairly prejudiced by maleficent debtors who initially keep the collateral, then abuse it, then give it back to the creditor. However, § 1329(b)(1) incorporates § 1325(a)(3), which requires that "the plan has been proposed in good faith and not by any means forbidden by law[.]" 11 U.S.C. § 1325(a)(3). "[W]henever a Chapter 13 p[la]n appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith . . . confirmation must be denied." Shell Oil Co. v. Waldron, 785 F.2d 936, 941 (11th Cir. 1986). Eleventh Circuit case law has accumulated a lengthy list of factors bankruptcy courts must consider in determining whether a plan has been proposed in good faith. See In re Porter-Dennis, 74 Collier Bankr. Cas. 2d 1509 (Bankr. M.D. Ala. 2015) (compiling a list of factors); see also Brown v. Gore (In re Brown), 742 F.3d 1309, 1316-17 (11th Cir. 2014); Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens), 702 F.2d 885, 888-89 (11th Cir. 1983). Focusing on the particular circumstances giving rise to this issue, the Sellers court has offered the following indicators to determine whether the modification is sought in good faith:

> (1) the extent of any post-confirmation depreciation in the collateral securing the affected creditor's claim, and whether the depreciation is the fault of the debtor;

> (2) whether the debtor failed to maintain insurance as required by a

loan agreement or an adequate protection order;[16]

(3) the proposed treatment of the creditor's deficiency claim (if any such claim exists);

(4) whether the debtor is current on plan payments; and

(5) the length of time between plan confirmation and the filing of the proposed modification.

Sellers, 409 B.R. at 830 (citations and parenthetical omitted, footnote added). Thus, the debtor's

post-confirmation modification and claim reclassification power "is subject to the qualification

that the modification has been proposed in good faith and, in particular, that there has been no

abusive depreciation of the secured creditor's collateral." Leuellen, 322 B.R. at 661 (internal

quotation marks omitted). Courts adhering to the majority view have denied such modifications

for lack of good faith when necessary. *E.g.*, In re Jones, 538 B.R. 844 (Bankr. W.D. Okla. 2015);

In re Tucker, 500 B.R. 457 (Bankr. N.D. Miss. 2013); In re Odlin, 2010 WL 3791486 (Bankr. D.

Or. Sept. 22, 2010); In re Butler, 174 B.R. 44 (Bankr. M.D. N.C. 1994). Section 1325(a)(3) is a

sufficient barrier to protect secured creditors from being unfairly prejudiced by an abusive post-

confirmation plan modification and claim reclassification.

---

[16] Even if the debtor has maintained insurance on the collateral, the amount of the deductible from the coverage must also be considered. An insurance deductible represents the debtor's conscious decision to allocate some risk of loss to herself in return for lower policy rates, and the creditor lacks control over such a decision. If an undersecured creditor's collateral is destroyed and replaced with insurance proceeds, as happened in this case, the debtor cannot reclassify the creditor's claim as unsecured to the extent that she had a deductible in her insurance proceeds.

### 3. Plan Modification and Claim Reconsideration are Exceptions to the Binding Effect of Plan Confirmation

Finally, the Sixth Circuit held in Nolan that post-confirmation surrender of collateral would violate § 1327(a), which gives preclusive effect to orders confirming a Chapter 13 plan. Nolan, 232 F.3d at 533; *see also* Universal Am. Mortg. Co. v. Bateman (In re Bateman), 331 F.3d 821, 829 (11th Cir. 2003). The only rationales the Sixth Circuit offered for its conclusion were its concerns about debtors acting in bad faith, discussed above, and its conclusory speculation that it was "unlikely" that Congress intended to permit post-confirmation claim reclassification. Nolan, 232 F.3d at 533. The Sixth Circuit heavily relied on these rationales in Adkins when it refused to permit the trustee to reclassify a claim secured by collateral that the creditor had voluntarily repossessed. Adkins, 425 F.3d at 302.

The Sixth Circuit's reasoning fails to acknowledge what should be obvious even from a cursory review of the Bankruptcy Code – that post-confirmation plan modification under § 1329 is an express statutory exception to the binding effect of a confirmed plan. If a plan modification satisfies the requirements of § 1329, the preclusive effect of the original confirmation order and § 1327(a) is irrelevant.

The same is true of claim reconsideration under § 502(j). Plan confirmation has preclusive effect as to claims when the basis for objecting to the claim should have been known to the objecting party beforehand. Richardson v. PNC Mortg. (In re Richardson), 538 B.R. 594, 602 (Bankr. M.D. Ala. 2015) (citing Bateman, 331 F.3d at 827). However, when there is cause for reconsideration of a claim based on information that could not have been known to the

-26-

movant prior to confirmation, or based on events occurring after confirmation, § 1327(a) is no

obstacle to reconsideration and reclassification of the claim.

### B. Analysis of Scarver's Modification

Having determined that post-confirmation surrender of collateral and reclassification of

any deficiency balance is permissible, the Court turns to whether Scarver has satisfied the

requirements to do so.

As discussed, Scarver initially promised to pay 1st Franklin $4,769.11 at 4.25% on a 2001

Toyota Corolla with a value listed generously at $4,125.00. She treated 1st Franklin as a 910-

creditor and promised to pay $99 per month toward the note and $41 per month in adequate

protection payments. The Court confirmed Scarver's plan in April 2014.

Scarver's case sailed smoothly until she wrecked the Corolla sometime around September

2015, and she received $2,800.00 in insurance proceeds for it. She objected to 1st Franklin's

claim, seeking to surrender the insurance proceeds in full satisfaction of the claim; the Court will

construe this as a motion for reconsideration of the allowance of 1st Franklin's secured claim

pursuant to § 502(j). Based on the circumstances, there is cause to reconsider the secured status

of 1st Franklin's claim. The Corolla has been declared a total loss and the insurance proceeds

have been paid to 1st Franklin; there is no other collateral securing 1st Franklin's claim.

Therefore, Scarver's motion should be granted insofar as it pertains to the secured status of 1st

Franklin's claim. However, 1st Franklin indicates that there is still around $1,400 owed on its

note; therefore, it still has an unsecured claim for that deficiency balance and has not been fully

satisfied.

-27-

Scarver also moved to modify her plan to stop payment on 1st Franklin's secured claim and to surrender the insurance proceeds (which have now been surrendered) to 1st Franklin. Her modification complies with §§ 1329(a)(1) and (a)(3) because Scarver intends to reduce payment on 1st Franklin's specially-classed secured claim and is seeking to offset payments made outside the plan on the claim (the insurance proceeds). Section 1325(a)(5) is no longer applicable because 1st Franklin no longer has a secured claim, and Scarver is permitted to pay 1st Franklin nothing on its now-unsecured claim pursuant to § 1322(b)(8). Regarding § 1325(a)(3)'s good faith requirement, there at first blush appears to be a steep drop in the Corolla's value from the time the plan was proposed until it was wrecked (roughly one-third of its value). The Court may look to its own experience and real-world knowledge in making this determination, however, and in this case the facially steep depreciation appears more to be the result of Scarver's excessive valuation of the Corolla at the start of the case than abusive treatment of the car. There is no other indication that Scarver has acted in bad faith and, considering the wreck, she has a legitimate reason to modify her plan (*i.e.*, she is not doing this on a whim). The Court concludes that § 1325(a)(3)'s good faith requirement is met, as are the remaining requirements of § 1329(b)(1). Scarver's proposed modification complies with § 1329.

## IV. CONCLUSION

Pursuant to the majority view on post-confirmation surrender of collateral and claim reclassification, which this Court now adopts, 1st Franklin's claim lost its secured status when its collateral was liquidated. Scarver properly moved to reconsider the allowance of 1st Franklin's secured claim and to modify her plan. 1st Franklin retains an unsecured claim for its deficiency

balance.  Therefore, 1ˢᵗ Franklin's motion for a determination that its claim is still secured is

DENIED.

Done this 23ʳᵈ day of August, 2016.

*William R. Sawyer*

United States Bankruptcy Judge


c: Michael D. Brock, Attorney for Debtor
   Charles N. Parnell III, Attorney for 1ˢᵗ Franklin Financial
   Curtis C. Reding, Trustee